### PEOPLE *v.* WHITE.

INTOXICATING LIQUORS — LOCATION OF BARROOM — VIEW OF BAR FROM STREET.

2 Comp. Laws, § 5409, providing that, during the time when places where liquor is sold must be closed, all curtains, screens, *partitions,* and other things that obstruct the view of the bar from the street shall be removed, is violated where a hotel barroom is located back of the office and cloakroom, so that, irrespective of any curtains or movable partitions, the bar cannot be seen from the street; and this notwithstanding the bar was maintained in the same place when the proprietor's tax was accepted and his bond approved.

Exceptions before judgment from Calhoun; Smith, J. Submitted February 15, 1901.  Decided July 10, 1901.

A. J. White was convicted of a violation of the liquor law.  Affirmed.

*F. W. Clapp* and *O. S. Clark*, for appellant.

*Jesse M. Hatch*, Prosecuting Attorney, for the people.

MOORE, J.   The respondent was convicted under an information charging him with failing to remove the "curtains, screens, partitions, and other things" that obstruct the view from the sidewalk, street, and alley in front and at the side of the building where his bar was located, and also charging that, if all the curtains and screens were removed, the bar was so located that it could not be seen from any public street or alley in front of or at the side of said building.   He is the proprietor of the Williams House, in Battle Creek.   In June he made an application to pay his liquor tax, stating in it "that he intends to engage in the business of retailing spirituous, malt, brewed, fermented, and intoxicating liquors at the Williams House, and that the place in which he proposes to carry on the business is the Williams House, East Main street, Battle Creek city, in the county of Calhoun, in the State of Michigan."   His tax was paid, and a receipt was issued to him as provided by section 5384, 2 Comp. Laws, stating the amount of the tax, and the time for which it was paid, and the kind of business,—*i. e.*, to run a bar in the Williams House, on East Main street, Battle Creek, Mich.   The barroom and bar were located behind the check-room and office of the hotel, and where the place where the liquor is sold and kept for sale cannot be seen from any sidewalk, street, alley, or road in front of or at the side of said Williams House.

The following colloquy between the trial judge and the counsel for respondent will show the claim of respondent in the court below and here:   After the proofs were closed,—

"Mr. Clapp, on the part of the defendant, moved that a verdict of not guilty be directed by the court.

"*The Court:* Are you willing to state your reasons?

"*Mr. Clapp:* Yes, sir. That, according to the evidence, the barroom is not visible from the public street, and that the law does not require it to be visible from the public street; that, if it is located on a public street or alley, then the screens must be removed; that, if it is not so located, screens do not have to be removed; that, under the showing, the authorities have taken Mr. White's money, and approved his bonds, last June, and are presumed to know the location of that barroom, which is in the same location that it has been in for the past 10 years at least. Again, that the statute does not require or provide that a barroom shall be located next to a public street or alley.

"*The Court:* I think it is conceded that the bar or the place where liquors were kept for sale and sold in this saloon is not where it could be seen from any public street or alley, though the screens were up.

"*Mr. Clark:* Yes, sir.

"*The Court:* You claim that a man has a right to put a saloon in that kind of a place? If he does it, it is no matter whether he keeps his screens up or not?

"*Mr. Clark:* He does it with the approval of the authorities, who approve his bond and accept his money.

"*The Court:* In a case like Mr. White's?

"*Mr. Clark:* Had Mr. White put up some of these obstructions after the bar had been located there, and after his money had been accepted and bond approved, it would raise a different question; but, the conditions all remaining the same after the bond was approved and the money paid, the statute not requiring a saloon to be on a public street or alley, we claim the defendant is not guilty of the offense."

Counsel have called our attention to the following cases in support of their position: *Shultz* v. *Village of Cambridge*, 38 Ohio St. 659; *Com.* v. *Barnes*, 140 Mass. 447 (5 N. E. 252); *Com.* v. *Stratton*, 150 Mass. 188 (22 N. E. 893); and *Courtright* v. *Common Council of Newaygo*, 96 Mich. 290 (55 N. W. 808). A reference to these cases will show they are not controlling. In *Shultz* v. *Village of Cambridge*, *supra*, the respondent was charged with violating an ordinance forbidding any

one, " where intoxicating liquors are sold or furnished for * * * tippling or intemperance, to permit at, in, or about the doors, windows, or other openings of said premises, or in the interior of any house, shop, room, booth, arbor, cellar, or place where intoxicating liquors are sold or drank, any blind, screen, painted or frosted glass, shade, curtains, or other device to prevent a free and unobstructed view from the outside of said premises of the interior of the same." The windows opening from the front room, where the bar was, were not obstructed. Between the front room and the second room, where liquor was drank at tables, was a permanent board partition, with a door in the center. It was claimed that the maintenance of the partition was a violation of the ordinance. In disposing of the matter the court said :

" General words following particular and specific words must ordinarily be confined to things of the same kind as those specified. Bish. Wr. Laws, §§ 245, 246; Hard. Const. Stat. 83; Maxw. Interp. Stat. 297; *Denbow* v. *State*, 18 Ohio, 11. Thus, in *Reg.* v. *Cleworth*, 4 Best & S. 927, Cockburn, C. J., said :

" 'There is a general expression, " other person whatsoever;" but, according to a well-established rule in the construction of statutes, general terms following particular ones apply only to such persons or things as are *ejusdem generis* with those comprehended in the language of the legislature.'

" True, this rule is not to be employed in any case to defeat the plain intent of the general assembly (*Woodworth* v. *State*, 26 Ohio St. 196; *Reg.* v. *Edmundson*, 28 Law J. M. Cas. 213 ), but the rule seems to be strictly applicable here. And, according to a general rule equally applicable, such general words, following particular descriptive words, do not include such a partition for the further reason that it is of a more permanent and important character than the things specifically mentioned."

We think it very clear, had the word " partition " been in the ordinance, the ruling would have been very different.

In *Com.* v. *Barnes, supra,* the respondent had been licensed by the licensing board " to sell, or expose or keep

for sale, until May 1, 1885, spirituous or intoxicating liquors to be drunk on the premises, to wit, in the front room and rear room, on the first floor, contiguous to street." This building fronted on the street, and contained two rooms. The front room was separated from the rear room by a partition having two permanent openings the size of an ordinary door, which were unprovided with doors, and had never been screened. Looking through the window, the public had a complete view of the interior of the front room and of the business done there, and a view of a portion of the rear room through the permanent openings. The place where the liquors were kept was at all times within the view afforded by the window. The court held the respondent was not guilty, using the following language:

"We are of opinion that when a man is expressly licensed to sell intoxicating liquors 'in the front room and rear room' of a certain floor of a building, and is not required by the licensing board to remove the partition between the two rooms, that partition is not within the provisions of Pub. Stat. chap. 100, § 12, and Stat. 1882, chap. 259, § 1, although it may obstruct the view of the interior of one or the other of such rooms from the public street. By Pub. Stat. chap. 100, § 6, the notice of application is to designate 'the building or part of a building to be used.' By section 9, subd. 5, the license shall specify 'the room or rooms in which such liquors shall be sold or kept by a common victualler. No person licensed as aforesaid, and not licensed as an innholder, shall keep, sell, or deliver any such liquors in any room or part of a building not specified in his license as aforesaid.' This language plainly imports that a license may be granted to sell liquors, not only in one room, but in more than one. If in one room alone, that room may be any room in the building, so far as any direct expression of the statute goes. If more than one are licensed, they must be separated by a partition, which may, and probably will, interfere with a view of the interior of one of them. As the statute seems to us to contemplate these possibilities, and to leave them to the discretion of the licensing board, we cannot read the provision that the board shall require the licensee to remove any obstruction which may interfere with a

view of the interior of the licensed premises as limiting their power to license, or as requiring that all licensed premises shall be, or be turned into, front rooms on the lower story, any more than as requiring that the whole front of the building shall be of glass. We think that a license might be granted to use a room on the second floor, or a back room, or a room lighted only by a skylight. *A fortiori,* we are of opinion that the prohibition against the licensee maintaining any partition ' upon any premises used by him for the sale' does not apply to leaving *in statu quo* the walls of the several premises contemplated by the license as remaining distinct."

See *Com.* v. *Stratton, supra.*

It becomes important to inquire whether these decisions are applicable to the provisions of the Michigan statute. To determine this question it is well to look at the provisions of the Massachusetts statute. The laws governing the sale of intoxicating liquors in Massachusetts are found in chapter 100 of the Public Statutes, and the various amendments thereto. It is provided that the voters shall determine annually whether licenses to sell liquor shall be issued in their municipality or not. If they vote to issue licenses, the number to be issued is limited by law based upon population. Before one can obtain a license, he must make an application for a license. After this is done, notice of applications for licenses is published in a newspaper for 10 days, and such notice sets forth the name of the applicant in full, the class of license applied for, and a particular description of the premises on which the license is to be exercised, designating the building or part of a building to be used. Pub. Stat. Mass. 1882, chap. 100, § 6. The law provides for objections to the granting of a license at a given place or to a given person, and a hearing before the board of licenses, and the board may refuse to grant the license applied for. It will be seen a wide discretion is imposed upon the licensing board.

These provisions of law are very different, indeed, from the provisions of the Michigan statute. If one desiring to engage in the sale of intoxicating liquors in this State

tenders to the county treasurer the tax imposed upon the business, and a proper bond, the county treasurer has no discretion, but must issue the tax receipt. He has nothing to do with deciding in what place the business shall be conducted. He has no discretion to say where the business shall be conducted, or to pass upon the fitness of the person who proposes to engage in it. All those things are provided for in the statute, and the statutory provisions must be observed. The tax receipt in this instance authorized the business to be carried on in the Williams House, at Battle Creek. There were plenty of places in that building where the business could have been carried on so that the proprietor of it could have complied with the provisions of the law. If there was no such place, then the business should not have been engaged in. The language of the statute is not ambiguous. It reads as follows:

"During the time when, by the provisions of this act, places where liquor is sold or kept for sale must be closed, all curtains, screens, partitions, and other things that obstruct the view, from the sidewalk, street, alley, or road in front of or at the side or end of said building, of the bar or place in said room where said liquors are sold or kept for sale, shall be removed." 2 Comp. Laws, § 5409.

It was at one time urged that this statute was unconstitutional. This court held otherwise. *Robison* v. *Haug*, 71 Mich. 38 (38 N. W. 668). It was said in that case that the right to construct a building without windows, or with stained windows, or with curtained windows, is one of the uses the owner has a right to make of his property; but the court was of a different opinion. In the opinion of Justice LONG it is said:

"The business of selling intoxicating liquors is one which the legislature have an undoubted right to regulate or prohibit, and they have, therefore, the power to impose such conditions and restrictions upon the sale as, in their judgment, may seem wise, where such restrictions are applied to all alike, or to the same class alike. It is within the power of the legislative branch of the State govern-

ment, and is a part of the police regulations, such as the State may make in respect to the sale of intoxicating liquors for the prevention of intemperance, pauperism, and crime. It is not for the courts to determine its expediency, or, as said by Mr. Cooley in his work on Constitutional Limitations, ' to run a race of right, reason, and expediency with the legislative branch of the State government.' If the legislature may altogether prohibit the liquor traffic, they may make such conditions if it is permitted to be continued, and place its sale under such restrictions, as will make it easy to detect any violations of law.   *   *   * The business of selling intoxicating liquors has for many years, both in this country and in England, been regarded by legislatures and courts with disfavor; and it does not stand upon the same plane of utility and morality with many useful arts, trades, and professions.   *   *   *   It is necessary to the public peace that saloons shall be kept closed Sundays and holidays, and at late hours at night. Under this provision it is easy for an officer or other person to determine whether a saloon is open contrary to law.   This section of the act must be held valid."

In the same case Justice CAMPBELL said:

" I think it competent for the legislature, in regulating the liquor traffic, to adopt regulations conducing to the full publicity of sales, and to require places of sale not to be shut out from view by putting up blinds and screens or other things intended to obstruct the view of the transactions which may go on at any hour in the sales-rooms."

In *People* v. *Kennedy*, 105 Mich. 79 ( 62 N. W. 1020 ), it is said:

" The object of the law is that the officers of a town, and not only that, but that every person in town,—it is the privilege of every man or woman in the town passing along any street, sidewalk, or alley, where they have a right to be, that they shall have an unobscured and unobstructed view into a saloon through the windows, if there are windows, so as to see whether or not the business is being carried on contrary to law.   That is the object of it."

It is competent for the legislature to surround the sale of intoxicating liquors with such limitations as are calculated, in its judgment, to minimize the evils of the traffic, and to

make it easy to observe any failure to refrain from selling during prohibited times. The acts of the respondent are within not only the spirit, but the letter, of the law.

The conviction is affirmed. The case is remanded, with directions to the circuit judge to proceed to judgment.

The other Justices concurred.